Your Honor, the first case this morning is called 208-1148, Italia Foods v. Sun Tours, DBA Hobbit Travel, and Paul Grosso. On behalf of the Appellant, Mr. Michael G. Richman. On behalf of the Appellant, Mr. Philip A. Bach. Counsel for the Appellant. Good morning. Good morning, Your Honors. Before I get started, pursuant to the local rules, we have provided, and I mentioned this to counsel a moment ago, copies of the out-of-state cases. I'm not certain if Your Honors wish that at the conclusion of the presentation or not, since there are quite a few out-of-state cases. He just pleaded with the clerk. That's fine. May it please the Court, Michael Richman, on behalf of... You said a couple of times I haven't... What does the local rule say? We only want copies of them if you have oral arguments? No, you know, Judge, we have them all here. Quite frankly, we called the clerk, and the clerk informed us that if we are citing both parties' out-of-state cases under the local rules, we have to furnish copies to the Court. Yeah, and I didn't think that was just when cases were oral, though. I'm not aware. Are you talking about Copnick cashing them in the brief? Well, yeah. I mean, I don't... It doesn't make sense to me that that rule would apply to cases when there's an oral argument and not apply to cases when there's not an oral argument. Because evidently they give us the option. Either you attach them to the brief, or you can furnish them an oral argument. Okay. Well, you can leave them with the clerk when you're done. That's fine. That's fine. Thank you, Your Honor. This case involves the Telephone Communication Protection Act, Consumer Protection Act. It's somewhat of a unique federal statute. We have an issue here in which it creates a federal cause of action. But what Congress did, evidently, is that they conferred the bulk of the jurisdiction, although the Seventh Circuit has said otherwise, exclusively to the states. This Court has granted the Rule 308 question certification for purposes of answering some of the lingering, thorny questions that appear to arise, at least in Illinois, in connection with the TCPA. Now, the first question deals with a threshold issue, and that is this question of the opt-in, opt-out, or the acknowledgment approaches that various courts have taken. And the question here is as to whether Illinois requires that, or excuse me, the TCPA requires that the Illinois legislature enact a statute, in other words, a General Assembly, in order to opt-in to the TCPA provisions. Now, the issue here is, I really see, Your Honor, as one of statutory construction. I know the constitutional issue is lingering, and I'll address that in a moment. But the real issue here deals with Section 227b-3 of the TCPA, which is in our appendix, and addressed by the parties in the briefs quite extensively. And the key language there, at least adopted by various courts and reviewed by the courts, is, if otherwise permitted by the laws or courts of a state, what does that phrase mean? And courts have reached different conclusions. And we have relied on the Texas Supreme Court case of Cherokee, which is one of the recent Supreme Court decisions that has adopted the opt-in approach. Now, what is the opt-in approach? The opt-in approach essentially says that before the state court can cognize a TCPA claim, the legislature must enact a statute. Now, one might think, wait a minute, this doesn't quite make sense. But you look at the statute as to a Congress enacted it, if otherwise permitted. What's the language mean? Permit means authorize, consent, give leave to, some type of affirmative conduct. And that's what Cherokee was addressing. It must mean something. Now, Italian Foods has basically argued throughout this case, no, no, no, no, no, it can't be that. It's a supremacy clause issue, because if you adopt a position of Cherokee, it's a violation of the supremacy clause. But wait a minute, wait a minute here. Congress could have simply said, you have a cause of action under the TCPA. They didn't. And as a matter of fact, had they done that, there is no question that the state courts would have jurisdiction, and the federal courts may or may not, depending, I guess, on what circuit you happen to be in. But they added a phrase, a proviso, a conditional language here, if otherwise permitted. Not if otherwise or unless prohibited by. That would mean, at least it's borne in some of the courts, is that you have a cause of action, unless the Illinois legislature or some other legislature prohibits the cause of action. They didn't use the word prohibit. They used the word permit. Now, using the position of the court, yes, ma'am. Don't you think the basis of the rationale, and I believe some of the case law says so, the rationale behind that language was that the federal government didn't want the state courts to be overwhelmed with these types of cases and would leave it to their discretion as to whether or not they would accept them. That's exactly right, Your Honor, and that's respectfully what Cherokee really held, is that they said, and this is a unique statute, we all understand from federal civil procedure, it's like a reverse theory question. We got a federal statute. We got Congress saying, we're closing our court doors. We're not going to handle these small claims. We're not going to engage in having Congress appropriate money for the federal courts down in the Northern District of Illinois to have $1,500, $2,000 cases every day. That's not going to happen. We're going to tell it to the states. We're going to say, states, we have a federal cause of action substantively. We're going to burden the states, if you will, with this claim if, and that's the key, Your Honor, if the state consents. Now, that's where all of these cases come down to is what does that mean? Does the state have to consent now? Does the state have to consent later? And what Your Honor is correct in what I think Cherokee held is that, wait, it didn't say prohibit. It said permit. And if we permit it, you've got a cause of action. Now, there's a human pride that, oh, my God, if we bar private claims, what is going to happen? Well, two things. One, the Attorney General of Illinois, this is under the TCPA, Your Honors, has the jurisdiction and the power to bring actions regardless of whether the Illinois legislature does anything under our particular circumstance in federal court, which is interesting because it says exclusive federal jurisdiction. Secondly, the Federal Communications Commission can bring actions. So an Illinois can adopt its own statute. Nothing is prohibiting Illinois from creating a private cause of action for unsolicited faxes if they so wish. But what is prohibiting Illinois from having concurrent jurisdiction with the federal courts? The statute, Your Honor. The language, if otherwise permitted. If the otherwise permitted language wasn't there at all, if it simply said a person, entity, may bring an action for a violation of the TCPA, I'm just paraphrasing. It didn't have the otherwise permitted. Your Honor, it's absolutely correct. That's the Howell versus Rose concept from the U.S. Supreme Court, is that in the absence of congressional directive to the contrary, and that's what the otherwise permitted language addresses, then there is a presumption, Your Honor, of concurrent jurisdiction. Well, how about the international science case? International science is actually a case we cited, Your Honor. That's out of the Fourth Circuit. And international science also was a case that was cited with approval by Chair King. And international science, I think, is an intriguing case. It's an old case. But what they did in that case, Your Honor, is that they agreed with the position I think Chair King is saying, is that, well, wait a minute. We're closing the federal court door. We're thrusting the claims in the state courts. The states have to consent. And that, to consent in order to make a cognizable cause of action. As a matter of fact, that's the case. So it does away with the opt-out, basically. That's correct. It does away with the opt-out. In what I think, Your Honor, in the Condon case in Florida, which we cite the dissenting opinion of the Chief Justice there, said that if you wanted to prohibit to have an opt-out provision, such as Your Honor is perhaps suggesting, the legislature should have used the word prohibit. They didn't. They used the word permit. Now, it's just the plain meaning of the language. And there's been a lot of contortions by the courts around the country. Yes, is Chair King a minority position? Yes, it is. I'm not going to dispute that. But we're not going to be tallying how many cases are one position, how many the other. Illinois hasn't decided it yet. Yes, the First District has a decision in First Capital that we've discussed. Yes, Your Honors, clearly aren't bound by that, we know. The Second District can certainly make its own decision, since Your Honors have never addressed it. But, of course, First Capital, the court, at least it's our position, if you read the opinions, Your Honors, that the parties agree to one particular approach, the acknowledgment approach. The acknowledgment approach essentially says supremacy clause applies and the states have no right to opt-in or opt-out unless they have what are called neutral rules, such as a form nonconvenience rule. None of the parties are in Illinois. If someone brings a fax case up into Lake County, you can throw it out because there's an Illinois neutral rule. But the problem with the acknowledgment approach, as Chair King said, Your Honors, is that it ignores the key language. And the key language here, which everybody has addressed, and nauseam, I might add, is if otherwise permitted. Now... But under that acknowledgment view, then no state can refuse to entertain the TCPA. That's correct, unless it has a neutral rule or, Your Honor, what I think even Howlett v. Roe said, they don't have any courts to entertain this type of a claim at all. In between Howlett and now, and I don't remember if there is such a case, a state that actually doesn't have the traditional system to handle this. But what Congress can say to Illinois, create a court, okay, to handle this claim. Congress can say to Illinois, If you've got courts that are handling similar types of claims, you should handle ours too. But they didn't say that here, all right? They didn't say that with... Can't you infer that and make an inference based upon the wording that we have out here in Illinois? That we have, there's an inference you can bring into action under the TCPA? Right, and that we have the courts that can handle that. Well, Illinois does not have a private cause of action in its current statute, Your Honor. There's a criminal action, penny for fence or something to that effect. It's been on the books for years, as we know. No private cause of action. I'm sorry, no separate state statute providing a cause of action for this? That's correct, that's correct. Well, then if they had that... We wouldn't be here. Well, someone might argue preemption, but the TCPA doesn't preempt anything. So you're probably right. I wouldn't be standing here before Your Honor if there was a private cause of action because my guess is Italian foods would have bring the action under the Illinois statute at minimum so there would be cognizability before the courts. But, Your Honor, on the inference that Your Honor is suggesting, I would submit, Your Honor, that the inference at least that the courts, for instance, Cherking and some of the other decisions, Hooters v. Hooters v. Nicholson, and in the Condon dissent case, the dissent in Hooters, is that they look at what the language said. None of this supremacy clause, but let's look at what did Congress say because that's what this case comes down to. What do they mean by this language? Now, the argument that if otherwise permitted simply means a reaffirmation of the supremacy clause doesn't quite make sense because it makes the language superfluous. Congress has a number of statutes, Your Honor, that I'm certain Your Honors have been familiar with over the years in which they don't have this language at all. They simply say to the states and perhaps even to the federal courts that there's a cause of action and it should be enforced. For instance, the FELA, Federal Employer Liability Act, or the Jones Act, they're concurrent jurisdiction between the federal and the state courts. No question about it. Bring it in any of the Illinois courts. But they don't have that language if otherwise permitted by the laws or courts of the state, laws or rules of the state, and any other federal statutes. As a matter of fact, I'm not certain there is such another federal statute that hasn't been cited. There's been other statutory provisions we put in our brief where Congress says unless otherwise prohibited, but that's all we have here. Excuse me, Your Honor. Your point, I think, is pretty clear that if the statute, the federal statute said unless prohibited, there wouldn't be any issue for you, right? That's correct, Your Honor. Now, and you think that when they say permitted, you have to have, what, a particular statute referencing this federal act? I forget the initials. TCPA. TCPA, yeah. So is that the only way a state could opt in would be something that specifically referenced the TCPA, or could you have, for example, a broader statement like we have here via Bellevue-Toyota in those cases about that the court's jurisdiction covers all controversies or however that's phrased? Does it have to be so specific it references the TCPA, or how broad could the opt-in provision be? Could a state pass a statute that says, without any reference to the TCPA, it just says, you know, all, or the Constitution of a particular state, as our Constitution does. Why doesn't our constitutional language act as the express statement of opting in? Two points, Your Honor. I ask to Bellevue. Bellevue, of course, dealt with the Illinois legislature attempting to divest the circuit courts under Illinois law of particular provisions. The cases we've cited, Cone and the Little Texas case that we have in the 3rd District, have held, and understandably so, is that when Congress speaks, Congress can, Your Honor, divest the circuit courts of Illinois, which have general jurisdiction under Article VI of the Illinois Constitution, of jurisdiction to the extent that Congress says so. All right? Why? Because of the supremacy clause. That's federalism. That's basically concepts of federalism. Now, your second point, Your Honor, is saying is that, well, how specific do you have to be here? Rule, a statute? And Your Honor raises a good point because there isn't much out there other than Cherokee. What did Cherokee do as an example of a state that actually did opt in, if you will, is that they amended their equivalent to the Consumer Fraud Act. Illinois has a Consumer Fraud Act. Texas has a Deceptive Trade Practices Act. All they did was make an amendment in their Consumer Fraud Act to allow faxes under the, excuse me, allow process of action for, I'll say, unsolicited faxes, things of that nature, in conformity with their particular statute. Did it have absolute reference to the TCPA? I don't think so. The point being is that they allow a specific type of cause of action. Now, could it be something other than the legislature enacting some type of mechanism to opt in? I'm not certain the Illinois Supreme Court, under its powers, could actually enact a Supreme Court rule to allow these types of claims, but in my years of practice, I've never said I'm careful of what the powers of the courts might be because maybe they could. Let me ask you this question. We talked about an inference or an intent, and oftentimes when you try to look to the intent of a certain statute, sometimes you look to the legislative history. Did you have an opportunity to look to the legislative history of this particular act? Yes. As a matter of fact, Your Honor, the legislative history in this case is sparse from both parties' standpoint, and both parties, I believe, addressed it. And there are statements by Senator Hollings, I believe I've got his name right, Your Honor. That's correct. Who had a paragraph or two, maybe a page or two, in the congressional record about this. That's about it. Now, the courts— But didn't Hollings say that the provision would allow consumers to bring an action in state court? Well, what Congressman—what he said, Your Honor, he talked about that, but he also talked about the fact, and this is what Chair King focused on, because I suspect you can focus on various statements in trying to read the mind of one particular legislature, which we always know is dangerous under the Pubach case and various cases in the Illinois Supreme Court, is that he talked about, the Senator talked about, that the states will act reasonably in permitting their citizens to go to court to enforce the bill. Okay, he's using the word permitting. He's using the word permitting. Chair King picked up on that and said, I can't get into his mind, we don't have the prescience, but it's reasonable to conclude that perhaps he, the sponsor of the bill, must have thought there had to be some permission by the state in order to trigger applicability of the TCPA. Reasonable people can differ, perhaps. Wasn't he also referring to or certainly inferring that these cases could be brought in small claims where the attorney's fees would not outweigh the possible damage recovery, and it really wasn't that the intent of the statute? Well, if the intent of the statute, Your Honor, was to bring it in small claims, that hasn't happened as a practical matter. That's not the point. The point is, isn't that a reasonable inference from his statement? If I'm not mistaken, I don't have it in front of me, but I think he comes right out and says, we're creating this statute so that the average person can bring this case without incurring major fees, major costs, time, et cetera, of litigation. And even the trouble damages, I think, was $500 or something like that? Fifteen. My mistake. Yes. What was that? His understanding is that they would be brought in small claims. Yes. I'm not going to argue with that. But what he went on to say, Your Honor, is that even if they're going to be brought in small claims court, or at least that was his intent, is that there still had to be permission. The next sentence, Your Honor, essentially the next sentence of the paragraph that the senator was talking about, which I had read from, is the issue of he hoped, he expected, that the states would permit their citizens to enforce the act. Now, does that mean that there had to be some type of triggering mechanism before he could go into small claims court to bring this? That was at least the intent of the reading of the share payment, Your Honor, is that there had to be some affirmative conduct, whether it's small claims court, whether it's courts of general jurisdiction. That's really a question of venue, if you will, or the type of court. And I don't think that's really what Congress was dictating, is that he's got to be over in small claims court in a certain quarterly county. That's not what they were saying. Probably that would be a Tenth Amendment problem. And what they did, actually, in 227b3, is they left the venue, if you will, the type of court, to the states, because that's exactly what it says, bring an appropriate court of the state. The states decide whether they're on small claims, general jurisdiction, wherever it happens to be. So isn't that a further indication that states have the opportunity to accept these cases or that litigants have the opportunity to file cases in state court  If it's otherwise permitted, yes. See, there are really two components, Your Honor, to that sentence when you really break it down. There's if otherwise permitted by the laws and rules of the court. We've talked about that. Then there's the second component, which I think addresses, I think, what the senator was talking about is where? Leave it up to the states in an appropriate court of the state. That's a venue component. So the threshold issue, the real nub of the appeal here, the threshold issue is does the legislature or any other body have to make some type of affirmative action in order to make these claims cognizable? Does otherwise permit mean affirmative conduct? I know we're way over your time limit. I'm sorry, Your Honor. That's okay. It was our fault, but we kind of concentrated on the jurisdictional issue. How about the statutory penalties question? Can you just touch on that briefly? Sure. Do you want me to address the statute of limitations issue or no? Just the statutory penalty? If you don't mind. That's fine. The statutory penalty, Your Honor, and I believe that's a little simpler here because I think we have some law at least to that effect from this district, at least the McDonald versus Levine case, which was recently affirmed in its principle by the Landis case the Supreme Court I think was back in May of this year. And that's the issue of what's a statutory penalty? What are the elements of a statutory penalty? And the statutory penalty elements are three, as we know. And the three elements deal with the question of what they deal with. There has to be a predetermined amount. The amount has to be by violation of the statute automatically, and it has to be essentially without any determination of actual damages. Now, the plaintiff in this case has just sought statutory damages, the 500 damages, just so we're aware of what the record reflects. There isn't any actual damages actually being sought. Why? Because the actual damages in an unsolicited fax, as we probably all would know, are pennies, dollars. They're essentially very, very small. So the issue here is what's the statutory language say? The statutory language talks about actual monetary loss or $500 damages, whichever is greater. And with the statute here, I believe it satisfied Landis and the McDonald standards, Your Honor, because it's determined there's automatic liability, and it's predetermined as to the amount, and you don't need actual damages. Now, there's been a lot of discussion about, wait a minute, this is a remedial statute. It has good purposes to it. I agree. I don't think there's any question that certain of the functions of the statute are remedial, but that's not the point. The point is here dealing with the remedy. What's the remedy here? For instance, the Consumer Fraud Act is remedial. We all know that, but it has statutory penalties that an attorney general can pursue. Here, too, as a number of the courts, whether it happened to be, I believe, in Colorado or New York, have addressed this specific issue, that the fact that you have a statute that might be remedial in certain purposes, in certain functions, no one's going to say that unsolicited faxes are good things. The legislature says they're bad. Fine. It's a remedial purpose. But the question is, what about the remedy? Is the remedy a statutory penalty within the definition of Illinois law? Now, what is important, I believe, is that on the issue of federalism and on this issue, that cases do seem to be uniform, that it's state law that applies. There's no federal common law of statutory penalties we're dealing with here. Just so we're all clear, we're dealing with the law of the forum. Even their cases talk about under the state law, what's the particular state law. So we look to the law of the forum here. It's Illinois law, and I would submit that because they're only seeking the statutory damages here, and of course the certified question in this case was, what did they seek in this particular instance? What's the statutory penalty? But perhaps more broadly, Your Honor, is that I think it falls directly within the parameters of McDonald's and Landis. And the last point I'd make on this, Your Honor, is that the argument by Italian Foods is, wait a minute, you can seek actual damages under the statute. Therefore, it automatically disqualifies the statutory penalty component. Landis, I believe, the Supreme Court, Your Honor, decision, I believe, has addressed that. That dealt with security deposits under the landlord-tenant ordinance in Chicago. In that case, you're dealing with, you can get certain damages for your security deposit, or you can get two times the security deposit. Actually, I misspoke. It's not or, it's and. And the Supreme Court said, it's still a statutory penalty. Here we don't have an and, we have a disjunctive. You get your actual damages, which isn't in this case, but could be. And we have, or we have, you get 500 bucks. Congress made the decision that $500 for better or for worse is what the court penalty, if you will, would be for sending an unsolicited fax. So they did limit it to the actual damages. And in order to be remedial, the only way you can acquire a remedy is through actual damages under Landis. So in conclusion, what we have here is a statute that gives you the option, but the fact you have an option doesn't mean that the actual remedy being sought is not a statutory penalty. Thank you. Thank you. You'll have time for rebuttal. And when you come back, I don't want to hear it now, but I want to hear your point. The point you're just raising is the entity that receives the money, how does that influence whether it's a penalty or not? I mean, if it's a penalty, if it goes to the government, is it a penalty that goes to the individual consumer? Maybe it's not. But you can get on that, and I'll let you hit that in rebuttal, irrespective of what he does. Thank you, Your Honor. Counsel for the appellee. Morning, Your Honor. My name is Phil Bach. I'm here on behalf of Italia Foods. The Circuit Court has subject matter jurisdiction to hear TCPA claims without enabling legislation from the General Assembly. TCPA was enacted 19 years ago. The year before that, Illinois passed its own statute making junk faxes a misdemeanor, interstate junk faxes a misdemeanor. TCPA claims have been litigated in this case for many years, in the 19 years that the statute's been on the book and the private right of action was created by Congress. I'm sorry. Say that last part again. It's been routinely litigated, TCPA claims in state courts? For many years, yes. For many years, and so there's abundance of it. Is that case law that expressly holds that, or is it just a bunch of cases that just presume it because they've addressed it? Or how did that come about? Probably the latter. So we're not talking about a new cause of action, though. We're not talking about a new issue. Well, I guess the question I'm asking is how do I know, what's the basis for you to say that there's been, the courts have routinely entertained private causes of action, like this one, under the TCPA? You mean what evidence do I have that there's other cases out there? Yeah. The most logical place to go would be to give me a list of appellate cases that have. . . And that was one of these TCPA claims. Okay. But is there any case that expressly, I mean, that answers part of my question. Is there a case that already expressly held, the question was raised, discussed, and held, and the answer is this? Yes, the first capital case. Well, I mean, in the first district, and then is there a conflicting law there, too, or not? No. Okay. But there is no case, Mr. Bach, out there that says these aren't cases that can be brought in state court? The only case that's ever said that that I'm aware of is Cherkin. Texas is the only. . . Twelve states' appellate courts, the FCC, all the Federal Circuit courts, the Seventh Circuit has said that it's an opt-out statute. Only Texas has said opt-in. And when they say that, they say that in the context that they have a statute on the book for six years there, that say you can file a private cause of action for junk faxes in Texas, doesn't mention the TCPA, doesn't say we hereby enable our courts. I don't know what the statute would look like. You know, if the General Assembly would issue a one-liner that says the circuit courts are hereby enabled. But the circuit courts of Illinois are courts of general jurisdiction. In 1964, the Illinois Constitution was amended to make them courts of general jurisdiction. Before that, courts of limited jurisdiction. So at that time, in 1960, the legislature, the General Assembly would have had to pass enabling statutes or something to say, I guess, whether they could. . . Well, but that was the question I asked your opponent when I asked him how specific does this opt-in have to be? And my question was, under the theory of Bellevue-Toyota and the Constitution giving the trial courts jurisdiction, does the Constitution, is that actually the opt-in? You could embrace the concept, yeah, we have to opt-in, we have to the Constitution, or is your position that we don't have to opt-in at all? I think that if we want to use the phrase opt-in, I think that is the opt-in. But the other opt-in is the U.S. Constitution, which has the supremacy clause. Illinois opted into the U.S. Constitution that says the federal laws are the law of the land, and they're binding on state court judges. Well, but he doesn't disagree at all with that. He's saying that there isn't any supremacy clause problem there if, in fact, we interpret what Congress did as saying you have to opt-in. And that's not a . . . the supremacy clause doesn't answer that question. And he's agreeing that the supremacy clause rules, but the supremacy clause is that supreme law is you have to opt-in. I think that given the supremacy clause, if Congress wanted to create a statute for the very first time ever that says we're creating a federal cause of action that's enforceable in state courts, only if the state courts want it, only if their General Assembly wants it, it would be the first time ever that they would do that. And if they were doing that, I think they would say expressly, if subsequently authorized, if expressly authorized by your state legislature, something like that. They don't say that. What they say is a person may, if otherwise permitted, file a case. Okay? What do you make of that language, if otherwise permitted, Mr. Barr? So many people before me, smarter than me, have explained it so much better than I can. The R.A. Ponte case from the Maryland Supreme Court is a very lengthy opinion that explains four different approaches. They explain how the if otherwise permitted . . . They have their own procedures and rules and their rules of neutral application. They don't have to create any special rules to have TCPA claims. But otherwise, if you can bring a case, about a $500 claim in an Illinois state court, whether it's a small claims court or whichever court that Illinois has decided, here's those kinds of claims. Then you can bring the case. But the other interesting thing, I think, is the phrase a person may. And I think it's not saying people. It's not saying people of a state may. Okay? It's not saying . . . I don't think it implies that the legislature has to do something. A person may. So Italia is a person. Italia is in Illinois. You know, the defendant is in Illinois. There's personal jurisdiction. There's venue. It's not an inconvenient forum. Those types of things support, permit, Italian foods to maintain a TCPA claim in a case where they're also seeking . . . They're also alleging state law claims about junk faxes, conversion and an unfair practice. So it's just, can they have a TCPA claim? Can they enforce their own federal right in their case already pending? Yes, they can. Let me direct your attention back a minute ago. You were saying that Congress could enact some strange law that would say you can do this, but only if, et cetera, et cetera. This is kind of an unusual federal statute, isn't it? I mean, are there a lot of statutes out there that exclude federal court jurisdiction and give it to the states, except when the Attorney General acts? Isn't this . . . this is . . . struggling is kind of unusual already, isn't it? It's unusual in the sense that most circuit courts said they were saying that federal courts could not have jurisdiction. Right. But Judge Easterbrook reads that same clause as saying what it's really saying is there's concurrent jurisdiction. So that was their way of saying you can have them in state courts, but of course you can have them in federal courts unless they say you can't, something like that. And in his opinion, he says that it's a knockout statute. You know, some of the courts, Maryland Supreme Court, the Oklahoma Supreme Court, other courts have said this acknowledgment approach has to be the right one because states aren't allowed to opt out of federal laws. They're not allowed to decide that they don't want to . . . we don't have that right in this state. Well, they'd be allowed to do it if the act itself said it, that states could. Well, the acknowledgment approach cases say that that might be wrong, that that might be unconstitutional, that Congress doesn't have the power to say people can opt out of federal laws. It's that states can opt out. But if the federal law is saying you can opt out of the federal law, that's the federal law, right? Yes, I understand that. And this would be the first statute that's ever said that. And you'd think that if they meant it, they would actually say that. The statute doesn't say if subsequently authorized. If your legislature expressly agrees that this is a good cause of action, it doesn't say those kinds of things. It just says if otherwise permitted. And this kind of case is otherwise permitted. And the First District, not in a lengthy opinion, but, you know, given that there were a lot of lengthy opinions that came before it, in a reasoned opinion, the First District explains why, of course, you can have this case in Illinois State Court. Can Congress pass laws that are in contradiction to the supremacy clause? You know, I'm not sure. I would probably argue that they can't. But I'm not a constitutional expert. I'm just trying to read this statute and know whether . . . What do you make of the discussion that I talked to counsel about, the discussion in Congress about the intent of the statute, basically? Right, the legislative history. Every court but Chair King has said that that legislative history shows that Congress was creating a cause of action. And they were saying . . . and Judge . . . and Senator Hollings says, in the beginning of the paragraph, says, because of constitutional constraints, we're not telling the courts, the state courts, in which court to have . . . or the states in which court to have the case and that sort of thing. But we hope that they'll make it easy and have a small claims court, you know, allow it in a small claims court and that sort of thing. Because the statute doesn't provide fee shifting and it doesn't provide costs. It's just, if you receive a junk fax and you want to file a lawsuit, you can get $500. And that's it. That's going to include your court filing fees. That's going to include your lawyer or whatever. So if you go to a small claims court, you know, you'll end up going to a small claims court where the defendants are going to argue that the statute violates the First Amendment and this and that. And they can't prove that you received it. There's a whole lot of issues that have come up in these cases that . . . which is why I think one of the reasons, obviously, why they've been brought as class actions is because there's a lot of complicated issues that come up. You know, if this case was in small claims court and they said you can't bring it because it says if otherwise permitted, would we have, you know . . . would the case really have gotten to the appellate court on a $500 claim? Except that Italian Foods received 28 junk faxes from these guys after the lawsuit was filed. All right. You mentioned the $500 thing, and you can stay on track wherever you're going, but I want you to find time before you sit down to address that penalty versus remedy. Yes. The other thing I wanted to note about the private right of action idea was this preemption idea. The TCPA says that it doesn't preempt states from doing something more restrictive. So, another issue here is whether a state has the power to do something less restrictive. Could the state say, we don't want that cause of action. That would be less restrictive. So, the statute has a specific thing about preemption, and it says we're not preempting more restrictive regulations about intrastate junk faxes. So, I think that preemption issue is another thing that shows that Congress intended that this case would be pursued in this court, in the circuit court rather. The penalty issue is only an issue if the court, for practical purposes, is only an issue in this case if the court doesn't say that Section 1658 provides the statute of limitations. Judge Grady in the Northern District of Illinois and four other state appellate courts have all said 1658 is the statute of limitations on TCPA claims. 1658 was created months before the TCPA, something like nine months before, and it says except where, except as otherwise provided by law. So, except as otherwise provided by federal law because statute of limitations issues for a federal claim is a question of federal law. So, we don't need to, we don't borrow state statutes when there's a federal statute of limitations on point. So, Congress creates a catch-all four-year statute, Section 1658. A few months later, they write a statute that doesn't have a statute of limitations, but very often Congress does not put a limitations period in a federal claim, which is why I had this borrowing, this whole borrowing thing. State courts and federal courts did the same thing. Defendant argues, well, that's just for federal judges, but 1658 is the law of the land just like every other federal law. The Supreme Court, we talked about the U.S. Supreme Court's decision in Jones. Jones is binding on this court as an interpretation of federal law. So, defendants say, well, that doesn't apply here because that's about federal judges. Well, Jones, the U.S. Supreme Court interpreting federal laws is important for state court judges, too, in binding on them. So, that gets you to this penalty idea. Is it a penalty? So, if 1658 doesn't apply, then we should worry about whether this is a penalty because we're going to try to figure out what statute of limitations applies or whether the assignment is valid. The TCPA is a statutory cause of action. It doesn't provide a penalty. It provides damages. Congress decided that $500 or more was an appropriate damage for somebody who receives a junk fax, files a lawsuit that doesn't provide costs or fee shifting. And so, the damages are only available to people who actually were damaged. Only if you receive a junk fax can you file a lawsuit. So, you were damaged. Congress decided that junk fax damages you. And the Illinois legislature, for some reason, a year before that, decided to damage you. Congress decided they damage you by using your machine to print somebody else's ad, your toner, your paper, to waste your time. You might have been trying to use the machine to receive something or send something. And so, they say you can either get your out-of-pocket losses or $500, whichever is greater. The McDonald's case, one of the elements looking for a penalty is is actual damage irrelevant. And under the TCPA, it's not irrelevant. It's only for people who were actually damaged. But again, the court doesn't have to get to the penalty issue because if it decides that Section 1658 is on the assignment issue. Well, the other issue is the tolling. I don't know where my time is exactly. I apologize. I lost time. The tolling issue, Illinois Supreme Court's held twice that the filing of a class action tolls the limitations period for absent class members. That includes Italian foods. Defendants say an eclipse files the case, has standing to file the case. Two years later, there's a stock sale. And in the stock sale, the guy who owned the company retains the right to receive the proceeds from this lawsuit. But if we find that it's not assignable, then we don't even get to the statute of limitations, right? Can you talk about the claim being assignable? The assignment issue isn't really an issue because Italian foods has nothing to do with the assignment. So the eclipse files the case, that tolls the limitations period. Hinman sells the company, retains the right to the claim, files a motion to substitute in as the plaintiff. If I could just finish that thought. Thank you. And the defendant argues Hinman can't do that. Hinman can't assign the claim. So meanwhile, eclipse is the partner. So if eclipse didn't validly assign, if the claim wasn't assigned to Hinman, then eclipse still had the claim and eclipse was still the plaintiff. And when they complain to the trial judge, Italian foods comes in and says, well, look, I'll be the plaintiff. I don't have this assignment issue. And there's a four-month gap. There's a four-month period where Hinman files a second event complaint substituting himself in. Four months later, Italian comes in. But the defendant, who argues the assignment's not valid, wants to look all the way back to the date of the sale, which has nothing to do with the case, nothing to do with absent class members. It's sort of a fortuity that they think they're going to – that the defendant is still sending junk faxes during the case. It's going to sort of get off the hook because, hey, look, there's something happened. Well, the tolling card prevents that. Okay. Thank you. All right. Thank you, counsel. Last point first. It's not a four-month gap. It's a 27-month gap. That's in the record. The briefs really deal with the question of Hess and its applicability. In my short period of time, I would refer, Your Honor, to the briefs on that, on the tolling issue. On 1658, 1658, Your Honor, it's very interesting. There's at least, we know, three states that have followed the proviso provision. And in 1658, it talks about – it's interesting – kind of just like the TCPA, except as otherwise provided by law. And except as otherwise provided by law, according to at least two courts in Texas, you've got a recent case from Pennsylvania, the Supreme Court, and Edwards in Nevada have said, well, except as otherwise provided by law, it must mean if there's another law to the effect that it's different than 1658, we apply to that. And that's where you get into the language if otherwise permitted by the laws or rules of the court. And the courts have said, yeah, it could have been a little clearer, but Congress must have meant something here, and therefore, we fall within the carve-out exception to 1658. Jones, Jones, U.S. Supreme Court case. No question Jones applied to 1658. And there's also no question, Your Honor, it never addressed this issue at all. It only addressed the issue of whether an amendment to Congress would apply to the four-year provision of 1658 that was enacted after 1658. And what's important to know here on 1658, Your Honor, is that it doesn't deal with worrying about state court judges as to what statutes of limitation apply. The legislative history, even cited by the more recent Worsham case they sought leave of court to file a few months ago, says it's designed to spare federal judges of the need to determine which state statute applies. Makes sense to me. If you're sitting on the federal bench, you've got five different potential causes, excuse me, different statutes of limitation in Illinois. You're not an Illinois court. I don't know which one to apply. I don't want to waste my time creating a law here. I'm going to use 1658. Four years. It's easy. It doesn't say we're worrying about sparing the state court judges of trying to determine which statutes of limitation apply. That's grist for their mills every day in their jobs, Your Honor. That's what they do. Congress isn't directing what state court judges do. So it's clear, at least I would submit, Your Honor, that 1658's carve-out provision does apply to this. Now, a couple quick other points. This counsel talks about Judge Easterbrook, and he talks about this issue of what Judge Easterbrook, which the case wasn't cited, actually, in the briefs, but we all kind of know what these are. In the Brill case, talking about, well, you know, there's no question that this had, there's just no opted provision here, that the states didn't have this issue of consent. It's acknowledged in the Supremacy Clause. They had to abide by the statute. If Your Honor's going to look at this case, which wasn't in the briefs, but if you look at the case, what Judge Easterbrook said is that each state has to decide for itself whether they're going to come in under 16, excuse me, under the TCPA or not. What Judge Easterbrook was saying, consistent with international science, as Your Honor suggested, and consistent with Chair King, is that it's up to the states. That's what Congress dealt with, and Your Honor is absolutely correct. This is a bizarre statute, and it was passed essentially because people were getting around the interstate faxes by making them interstate rather than intrastate. So if you have an interstate fax, there was no statute to protect you. So Congress came in and said, all right, no more interstate faxes. We're going to bar it by this legislation. We're going to let the states decide, under federalism principles, whether they want to spend the money, whether they want to allow courts, essentially, to adjudicate these. And there are a lot of cases in Illinois on these. I can take you through this a little. I've got to go back to my earlier question to you, then. How specific does this have to be? And I'm just going to answer your question right now, Judge. Why doesn't the Constitution already just do this? Illinois's Constitution. Well, I guess two points, Your Honor. If Your Honor looks at the Cherokee case in action of a footnote, in footnote 6 of the Cherokee decision, Your Honor, which we did cite, they do recite how they enacted, if Your Honor will, this opt-in language. Well, I'm more interested in if they felt they had to do it because the Texas Constitution didn't already do it. No. What they did address, Your Honor, similar to what Belleville is, is the Supreme Court in Cherokee said, you know, what about courts of general jurisdiction in Texas? They're similar to Illinois. We've got jurisdiction. We presume we have jurisdiction. In the court in Cherokee said that's absolutely correct, consistent with Belleville, Your Honor, except here, here differently, we have Congress with a directive saying we're going to divest the courts of jurisdiction, subject matter jurisdiction. We, Congress, can do that with the language, if otherwise permitted, in which we have cited cases, Your Honor. In our brief, I would look to the Cone v. Salata case and the Little Texas case, I think I mentioned that in my opening remarks, where the court specifically said that even courts, this is the Illinois Appellate Court speaking in the First District in Cone, Your Honor, even courts of general jurisdiction lack subject matter under the Illinois Constitution when it's contrary to a federal statute. So it all goes back down to where we started a while ago is what did Congress mean? And I think what Justice O'Malley is asking is a question I was going to ask you is what do you propose it would have to say, that there would have to be legislation passed in the state that says we hereby give authority to, we can't look to the intent of the statute? Well, the intent of the statute, and you're referring to 227B3, is to, in our position under Cherokee, is that legislature has to do something. Well, that's what we're asking you. What exactly would the legislature have to do? How specific would the legislature have to get in order to satisfy the language under the federal statute? And that's what I was trying to answer, and perhaps I wasn't articulate enough, is that what Texas did under a constitutional provision apparently similar to Illinois in terms of general jurisdictional principles, they said a person who receives a, this is the amendment, who receives a This is the amendment to their consumer product. Correct. That's what I mentioned in my opening remarks. But you already read that to us, so you don't have to read that again. Okay. But I want to answer your last question, Your Honor, that you said you wanted me to answer in my opening remarks, and that is that the penalty, the issue of the penalty, the penalty in Landis, which was the Supreme Court's decision, went to an individual, not a government. Okay. May I answer that question? Go forward. I can thank you both for your argument.